```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF MICHIGAN
                        SOUTHERN DIVISION
```

MARIO SMITH,

      Petitioner,        CIVIL ACTION NO.04-72864-01

  vs.                      DISTRICT JUDGE NANCY G. EDMUNDS

                           MAGISTRATE JUDGE DONALD A. SCHEER

PAUL H. RENICO,

      Respondent.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**RECOMMENDATION**: The instant Petition for Writ of Habeas Corpus should be dismissed as Petitioner has shown no violations of his federal constitutional rights.

                   \*     \*     \*

Petitioner, Mario Smith, a Michigan prisoner convicted first degree felony murder, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, on August 2, 2004, challenging the validity of his underlying state conviction. Following a jury trial in the Wayne County Circuit Court, Petitioner was convicted on February 21, 2002, of first degree felony murder. The court sentenced him to life imprisonment.

Petitioner filed an appeal as of right in the Michigan Court of Appeals and, in an unpublished per curiam opinion dated November 25, 2003, the Court affirmed the conviction. (Docket #241585). Thereafter, Petitioner filed an application for leave to appeal with the Michigan Supreme Court. On May 28, 2004, the Court denied leave to appeal in a standard order (Docket #125384).

Petitioner then filed the instant Petition for Writ of Habeas Corpus in this Court challenging his conviction on the following grounds:

> 1. Petitioner was denied his constitutional right to a fair trial by being prevented from exercising his right to present a defense to the charge against him.
>
> 2. The conviction was obtained by the unconstitutional failure of the prosecution to timely disclose to Petitioner exculpatory material evidence.
>
> 3. The trial court was biased, and acted disparagingly, against the defense's theory of the case
>
> 4. The trial judge erred where she conducted a Walker hearing without her glasses and was unable to see the witnesses.

>5. Petitioner was denied a fair trial when members of the victim's family compromised the jury.
>
>6. The prosecutor was guilty of misconduct when he called Petitioner a "monster" during opening argument.

Respondent filed an Answer to the Petition on January 31, 2005, contending that none of the issues raised by Petitioner had any merit. Petitioner did not file a reply to Respondent's Answer to date. The case was referred to the undersigned on November 8, 2005.

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), effective April 24, 1996, significantly changed the manner in which federal courts review habeas petitions. See 28 U.S.C. § 2254. Pursuant to the amended provisions of § 2254(d), a writ of habeas corpus may not be granted unless the state court proceedings:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

In reviewing the petition to determine, pursuant to subsection (2), whether the decision was based on an unreasonable determination of facts, we presume correct the factual findings made by the state court, § 2254(e)(1), and the petitioner may rebut the presumption of correctness only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998).

On April 18, 2000, the Supreme Court issued a decision in Williams v. Taylor, 529 U.S. 362 (2000), setting forth the standard of review that a federal habeas court must apply under § 2254(d) with respect to the effect of federal law.  The Court held that a decision of the state court is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Id. at 412. The Court further held that an "unreasonable application" occurs when "the state court identifies the correct legal principle from this Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 408.  A federal habeas court may not

find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

THE ISSUES

1. EVIDENTIARY RULINGS

Petitioner was charged with the beating death of Titjuana Neal, the 9 month old daughter of his live-in girlfriend. At trial, Petitioner's attorney attempted to question the victim's mother regarding the financial support he allegedly provided to her. Petitioner's theory of defense was that he nurtured and cared for the mother and baby and would not have violently killed the child. The prosecutor objected, stating that the questions were not relevant. The trial court agreed, and she sustained the objection. Petitioner now claims that he was denied his due process right to present a defense because the trial court refused to allow him to elicit testimony from witnesses in support of his theory of the case.

Trial court errors in state procedure and/or evidentiary matters do not rise to the level of federal constitutional claims cognizable in a habeas petition unless the errors render the trial so fundamentally unfair as to deprive the Petitioner of federal

5

constitutional rights. Matlock v. Rose, 731 F.2d 1236, 1242 (6th Cir. 1984), cert. denied, 470 U.S. 1050 (1985); Cooper v. Sowders, 837 F.2d 284 (6th Cir. 1988). In the instant case, Petitioner was not denied his right to present a defense. Contrary to Petitioner's assertion, the trial court did not refuse to allow the defense to elicit testimony from witnesses to support his theory that he cared for the baby and would not have killed her.

As pointed out by the Michigan Court of Appeals, defense counsel presented his theory in opening statement, closing argument and in the questioning of numerous witnesses. Despite the sustained objection, Petitioner was allowed to ask other questions which revealed details of the financial relationship that existed between him and the victim's mother. The defense was also allowed to question the treating doctor and forensic scientist who performed the autopsy on the child. Both witnesses concluded that blunt force trauma to the baby's abdomen was the sole cause of death. Since Petitioner's counsel was allowed to question witnesses regarding the cause of the baby's death and the financial support allegedly provided to the baby and her mother, Petitioner was not denied his right to present a defense or support his theory of the case.

Petitioner also asserts that he was denied a fair trial when the trial court refused to grant an adjournment of several

days to allow the defense to find an expert to review medical records in order to ascertain whether the hospital's administration of barium played a role in the baby's death. The hospital records had been provided to the defense by the prosecution just a week before the start of trial. The trial judge denied the request for an adjournment, ruling that Petitioner could present his expert the next day. The trial court noted that the trial had been scheduled for three months and that defense counsel had ample time to prepare its defense.

Whatever prejudice that may have occurred by not granting the adjournment was not so egregious as to render the trial fundamentally unfair. While Petitioner claims that he was prejudiced because he was denied the opportunity to present an expert witness, the Michigan Court of Appeals noted that defense counsel did not present any of the medical experts on their witness list. The defense also had the opportunity to cross examine both the treating doctor and forensic expert, who testified that only trace amounts of barium were found in the victim's lungs. Petitioner failed to show that his expert would have corroborated his theory that the baby had died from aspirating the barium. In fact, Petitioner never presented any witness to show a cause of death other than blunt force trauma. Having failed to demonstrate that the Michigan Court of Appeals decision upholding the

7

evidentiary rulings of the trial court resulted in an objectively unreasonable application of clearly established Supreme Court law, this claim should be dismissed as being without merit.

2. <u>FAILURE TO PROVIDE EXCULPATORY EVIDENCE</u>

Petitioner asserts that the prosecution failed to disclose exculpatory evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), thereby warranting habeas relief. Specifically, Petitioner argues that the prosecution improperly withheld hospital medical records until the week before trial. Petitioner complains that the late delivery of a portion of the medical records interfered with defense counsel's preparation of opening argument, cross-examination and defense expert procurement.

<u>Brady v. Maryland</u>, <u>supra</u>, requires disclosure only of evidence that is both favorable to the accused and "material either to guilt or to punishment."  373 U.S. at 87.  The state's failure to assist a defendant by disclosing evidence which might be helpful in cross-examination is a constitutional error only if it is material in the sense that it is reasonably probable that the outcome of the trial would have been different had the evidence been disclosed. <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). In determining the materiality of a suppressed item of evidence, the court may "consider directly any adverse effect that the

8

prosecutor's failure to respond might have had on the preparation or presentation of the defendant's case." Id. at 683.

In the instant case, I am persuaded that Petitioner was not denied a fair trial by the prosecution's late delivery of the medical record evidence. Petitioner has failed to carry his burden of demonstrating that the evidence was exculpatory or would have affected the outcome at trial. Contrary to Petitioner's assertion, the records were not withheld by the prosecution. As pointed out by the Michigan Court of Appeals, the records were turned over to the defense as soon as they were received from the hospital. Moreover, Petitioner knew of the baby's hospitalization, and he could have procured the records himself. In any event, Petitioner has failed to show that the hospital records contain any information favorable to the defense. There was no information that barium was the cause of death. Under these circumstances, the trial court did not abuse its discretion in failing to sanction the prosecution. Having failed to rebut the state court findings, or otherwise show that he was convicted as a result of the state's withholding of exculpatory evidence that would have changed the verdict in this case, Petitioner's habeas claim must be rejected.

3. **JUDICIAL BIAS**

Petitioner complains that the trial judge was biased against him. He asserts that the trial judge refused to allow the defense to respond to relevancy objections. He also maintains that the judge was sarcastic to counsel outside the presence of the jury. The Michigan Court of Appeals rejected this identical claim on direct appeal, ruling that it is the duty of the trial judge to limit the introduction of evidence and the argument of counsel to relevant and material matters. As for the matter of alleged sarcasm directed at defense counsel by the trial judge, the state appellate court noted that Petitioner had failed to demonstrate any prejudice. Since the comments admittedly occurred outside the presence of the jury, the court reasoned that it could not have influenced their decision (Michigan Court of Appeals Opinion, November 25, 2003 at p. 4-5).

The Sixth Circuit recently considered an allegation of judicial bias in a § 2254 case. "Because judicial bias infects the entire trial process it is not subject to harmless error review." Maurino v. Johnson, 210 F.3d 638, 645 (6th Cir.), cert. denied, 531 U.S. 979 (2000); see also Chapman v. California, 386 U.S. 18, 23 (1967). "Instead, the court is required to assess whether the actions of the judge rose to the level of judicial bias. If the court determines that the actions resulted in a constitutional violation, then the court is required to overturn the state court

decision. In reviewing claims of judicial bias, this court is guided by the decision in Liteky v. United States, 510 U.S. 540 (1994)." Maurino, 210 F.3d at 645. Liteky, in turn, holds:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.... Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.... *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as ... judges, sometimes display. A judge's ordinary efforts at courtroom administration--even a stern and short-tempered judge's ordinary efforts at courtroom administration--remain immune.
>
> Liteky, 510 U.S. at 555-56 (emphases in original).

When this case is examined in light of the standard quoted above, it is clear that the Michigan Court of Appeals' resolution of Petitioner's judicial bias issue represented a reasonable application of constitutional law as set forth by the Supreme Court. Petitioner has failed to establish any prejudice as a result of the alleged bias of the trial judge. Sustaining relevancy objections was neither improper nor partial to the prosecution since questioning the victim's mother regarding her financial relationship with Petitioner had nothing to do with the cause of the baby's death.  Allegations of sarcastic or dismissive comments outside the presence of the jury, with nothing more, does not establish bias, and so this claim should be rejected as being without merit.

4. <u>VOLUNTARINESS OF PETITIONER'S CONFESSION</u>

Petitioner next claims that he was denied his right to due process because the trial judge did not wear her eyeglasses when she conducted an evidentiary hearing to determine the voluntariness of his confession. Petitioner maintains that the evidentiary hearing was inadequate because the judge could not see the witnesses in order to fully evaluate their body language.

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions against

12

a defendant. Colorado v. Connelly, 479 U.S. 157, 163-64 (1986). A confession is considered involuntary if: (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question." McCall v. Dutton, 863 F.2d 454, 459 (6th Cir. 1988).

When determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." Miller v. Fenton, 474 U.S. 104, 112 (1985). Without coercive police activity, however, a confession should not be deemed involuntary. Connelly, 479 U.S. at 167 ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause"). The burden of proving that a confession was obtained involuntarily rests with the petitioner. Boles v. Foltz, 816 F.2d 1132, 1136 (6th Cir. 1987). Voluntariness need only be established by a preponderance of the evidence. Id.

In this case, the trial court conducted a hearing and determined that both Petitioner's waiver of his *Miranda* rights and his confession were voluntary. On appeal, the Michigan Court of Appeals affirmed the trial court's decision. Considering the

totality of circumstances in this case, I am persuaded that the state courts' determination that Petitioner's waiver and confession were voluntary was a reasonable application of controlling Supreme Court precedent.

Petitioner has failed to demonstrate how he was prejudiced by the judge's inability to see from a distance. As pointed out by the Michigan Court of Appeals, there is nothing in the record showing that the judge could not see the witnesses who were testifying at the evidentiary hearing. There was also no indication that she could not see the photographs of Petitioner depicting his alleged beating by the police. According to the trial transcript cited by the Michigan Court of Appeals, defense counsel did not even voice a contemporaneous objection when the trial judge acknowledged on the record during the hearing that her long distance eyesight was poor without glasses. Petitioner has failed to show how he was prejudiced by the judge's failure to wear her glasses at the evidentiary hearing concerning the voluntariness of his confession. He is thus not entitled to habeas relief on this claim.

5. <u>OUTSIDE INFLUENCES ON JURY</u>

Petitioner claims that he was denied his right to a fair trial and impartial jury due to outside influences on the jury.

Specifically, he argues that an emotional outburst by the victim's mother in front of the jury, and the display of the baby's photograph to the jury by the victim's family, influenced the jury in such a way as to render it biased against the defense.

The Sixth Amendment right to a trial by jury is designed to ensure criminal defendants a fair trial by a panel of impartial jurors. United States v. Davis, 177 F.3d. 552, 556-557 (6th Cir. 1999). A new trial will not be necessary every time a question of jury partiality is raised. In cases where a colorable claim of extraneous influences has been raised, the defendant bears the burden of proving actual juror bias. No presumption of prejudice arises merely from the fact that improper contact occurred. United States v. Davis, 177 F.3d at 557.

In the instant case, the trial court took immediate precautionary measures to ensure that two outside events did not influence the jury. Following a verbal outburst by the victim's mother, who was reacting to the testimony of the medical examiner, the judge had the jury exit the room and had the mother escorted out of the courtroom. After the display of the victim's photograph, the court immediately ordered the victim's family to

15

put the photograph away. The order was followed, and the photograph was not displayed again.

Upon review of these two isolated incidents, I am persuaded that Petitioner was not denied his right to a fair trial and impartial jury. The trial judge took immediate precautionary measures to mitigate any prejudice that might have been caused by the outburst and the display of the victim's photograph. In addition, the trial court's instructions to the jury before deliberations properly cautioned the panel to decide the case solely only on evidence heard only from the witness stand. As Petitioner has failed to demonstrate actual prejudice resulting from either the verbal outburst or the display of the photograph, this habeas claim should be rejected as being without merit.

6. PROSECUTORIAL MISCONDUCT

The standard for determining if a prosecutor's actions violate federal constitutional guarantees, not unlike that for trial judges, is whether the complained-of conduct "so infects the trial with unfairness as to make the resulting conviction a denial of due process," Darden v. Wainwright, 477 U.S. 168, 181 (1986), or is "so egregious as to render the entire trial fundamentally

unfair."  Cook v. Bordenkircher, 602 F.2d 117, 119 (6th Cir.), cert. denied, 444 U.S. 936 (1979).  The Court must assess the prosecutor's alleged statements in the context of the evidence offered against the defendant at trial and decide whether the statements "could have tipped the scales in favor of the prosecution."  Robison v. Maynard, 829 F.2d 1501, 1509 (10th Cir. 1987).

In reviewing a claim of improper comment by the prosecutor, the Court may consider: 1) whether the remarks tended to mislead the jury or to prejudice the accused (including whether the trial judge gave an appropriate cautionary instruction to the jury); 2) whether the remarks were isolated or extensive; 3) whether they were deliberately or accidentally placed before the jury; and 4)the strength of the evidence against the accused. United States v. Monus, 128 F.3d 376, 394 (6th Cir. 1997)(quoting United States v. Leon, 534 F.2d 667 (6th Cir. 1976)). In deciding whether prosecutorial misconduct mandates reversal, the harmless error standard is to be applied. See generally, Eberhardt v. Bordenkircher, 605 F.2d 275 (6th Cir. 1979).

Petitioner claims that the prosecutor was guilty of misconduct during opening statement when characterizing him as a "monster".  Petitioner asserts that the prosecutor's insult had

17

aroused juror sympathy for the victim while demonizing him, thereby depriving him of a fair trial.

It has long been recognized that prosecutors enjoy considerable latitude in presenting arguments to a jury, and that reversal of a conviction should not be ordered when a prosecutor's behavior, even though inappropriate, has not resulted in prejudicial error.  See, United States v. Young, 470 U.S. 1, 11-12 (1985); Angel v. Overberg, 682 F.2d 605 (6th Cir. 1982). When placed in the context of the evidence offered both for and against Petitioner, the prosecutor's remark, though inappropriate, was not so egregious as to render the entire trial fundamentally unfair. Since Petitioner has not shown any prejudice resulting from the isolated remark, the one-time use of the characterization does not amount to prosecutorial misconduct. There is little likelihood, because the prosecutor's momentary lapse of judgment, that Petitioner's conviction amounted to a miscarriage of justice, was fundamentally unfair, or was the result of a violation of any specific constitutional right.  Consequently, the alleged instance of prosecutorial misconduct should be rejected as being without merit.

For all of the above reasons, I find that there is no substantial showing of any violation of Petitioner's constitutional rights, and no basis under the highly deferential

standard of the AEDPA to find any unreasonable application of clearly established federal law by the state trial courts in this case. Accordingly, it is recommended that the instant Petition for Writ of Habeas Corpus be dismissed.

The parties are advised that any objection to this Report and Recommendation must be filed with the Court within ten (10) days after they are served with a copy, or further appeal from Judge Edmunds' acceptance thereof is waived.

s/Donald A. Scheer
DONALD A. SCHEER
UNITED STATES MAGISTRATE JUDGE

DATED:   March 3, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing Report and Recommendation was served upon Mario Smith and counsel of record via the Court's ECF System to their respective email addresses or First Class mail to the address disclosed on the Notice of Electronic filing on March 3, 2006.

s/Jennifer Hernandez
Case Manager

19